IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DONNELL LAMONT COVINGTON,      *
          Petitioner,
      v.                    *  CIVIL ACTION NO. JKB-12-2564

BOBBY P. SHEARIN,[1] et al.,      *
          Respondent.
                    ***

## MEMORANDUM

A response to the petition for writ of habeas corpus with exhibits was filed in the above-captioned case.  The matter is now ready for dispositive review.  The court finds no need for an evidentiary hearing.  *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts* and Local Rule 105.6 (D. Md. 2014); *see also Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000) (petitioner not entitled to a hearing under 28 U.S.C. § 2254(e)(2)).  For the reasons to follow, the petition will be denied.

### Factual and Procedural History

Donnell Lamont Covington was convicted of the first degree murder of Robert Johnson, and openly carrying a deadly weapon with the intent to injure in the Circuit Court for Baltimore City after a jury trial presided over by the Honorable Emanuel Brown.  ECF No. 6, Ex. 4.  The facts demonstrated during the trial, as summarized by the Court of Special Appeals of Maryland, are as follows:

> On the afternoon of May 7, 2008, Robert Johnson was fatally stabbed in the 1200 block of James Street in Baltimore City. Criminal agency was the focus at trial. The State presented evidence from four eyewitnesses: James Harmon, Brian Kramer, Daniel Smith, and Nickey Lowery. Each identified [Covington] as the perpetrator. The defense argued that someone other than [Covington] stabbed the victim. . . .

---

[1] The Clerk shall be directed to amend the docket to reflect the proper spelling of respondent's name.

The four eyewitnesses, the victim and [Covington] were familiar with each other and the Sargeant and James Streets area of Baltimore City where the stabbing occurred. The victim, Harmon, and Smith were drug users; Lowery and [Covington] were drug dealers. Additionally, each of the eyewitnesses, except Kramer, had prior convictions. Harmon had prior convictions for felony drug possession with intent to distribute, loitering, and fourth-degree burglary. Smith had a prior conviction for misdemeanor theft and several prior drug convictions. Lowery had prior convictions for possession and distribution of drugs.

Harmon testified that prior to the stabbing an altercation occurred between himself, the victim, and [Covington]. Harmon explained that he and the victim were sitting on the stoop of a house on Sargeant Street, one block south of James Street. Harmon was waiting to purchase drugs to share with the victim when a woman they knew as "Shannon" sat down and joined them. Around this time, [Covington] came down the street cursing and yelling. He grabbed Shannon's arm and accused her of using his drugs the previous night with her boyfriend. Harmon and the victim intervened, explaining that she could not have used [Covington's] drugs because she had been with them the night before. [Covington] eventually walked away, but he was angry, telling Harmon and the victim that he would be back.

Shortly thereafter Harmon also left the area. When he returned a short while later he saw a group of people gathered around the victim. He recognized Lowery, Paul Tenney, and some others in the group; [Covington] stood off to the side. According to Harmon, the victim and Lowery were arguing when "out of nowhere" [Covington] stabbed the victim in the neck.

Brian Kramer testified similarly. He testified that while walking home from work, he saw a group of people, including [Covington], Lowery, and Tenney, talking loudly about hurting someone. He then saw Tenney hand Lowery a two-by-four piece of wood. As Kramer walked around the corner to get away from the group, Kramer saw the victim and approached him. Minutes later, the group came around the corner and approached them. Kramer testified that Lowery, while holding the two-by-four in her hands, told the victim "to mind his business and stuff like that and to stop sticking his nose in matters that don't concern him."  The victim retorted that she should "get out of my face." According to Kramer, "out of nowhere" [Covington] "pulled" a knife and stabbed the victim in the neck.

Daniel Smith, who lived in the 1200 block of James Street, also testified similarly to Harmon and Kramer. Smith testified that he was looking out his front door when he saw Lowery pin the victim up against the wall with a two-by-four. According to Smith, while the victim and Lowery yelled at each other, [Covington] came up behind the victim and stabbed him.

After the stabbing, [Covington], Lowery, and Tenney fled the area. The police were called and the victim was pronounced dead at the crime scene. Lead investigator Baltimore City Police Detective Napoleon McLain, a thirty-year police veteran, testified that when he arrived at the crime scene he directed the taking of evidence, in particular a two-by-four wooden board. A subsequent autopsy report revealed that the victim had a cutting wound and a stab wound both on the right side of his neck. The stab wound severed the jugular vein and carotid arteries causing rapid death.

Harmon and Kramer contacted and spoke with the police the day of the stabbing. Both were shown photographic arrays by Detective McLain. Each picked out pictures of [Covington], Lowery, and Tenney. Two days later, Smith spoke to Detective McClain and picked out pictures of [Covington] and Lowery from the police photographic arrays. From the arrays, Harmon, Kramer, and Smith each identified [Covington] as the person who had stabbed the victim.

Tiffany Lowery testified at [Covington's] trial pursuant to a plea agreement. Under the terms of the agreement, she plead[ed] guilty to assault and handgun violations on an unrelated charge and received a five-year sentence, and in exchange she agreed to testify truthfully at [Covington's] trial. She testified that Tenney handed her a two-by-four, and they walked up to the victim and started arguing with him. She testified that [Covington] approached, stood next to the victim, and then stabbed him in the neck.

ECF No. 6, Ex. 10, pp. at 1-4.

Petitioner was sentenced on June 3, 2010, to life imprisonment plus an additional three

years.  *Id.*, Ex. 7.

He noted a timely appeal raising the following claims in the Court of Special Appeals:

1. The trial court erred in granting the State's motion to exclude evidence that the primary investigating detective had been found to have lied to a judge in an unrelated case

2. The trial court erred in the admission of evidence of a dispute between Appellant and Robert Johnson

3. The trial court erred in its supplemental instructions to the jury in response to the jury's notes

*Id.*, Ex. 8, p. 2.

3

Petitioner's convictions were affirmed on June 15, 2011.  *Id*., Ex. 10.  Petitioner filed a self-represented petition for writ of certiorari raising the following claims:

I.      Did the Court of Special Appeals err in finding that the exclusion of evidence intending to impeach the primary investigating detective, was not preserve for appellate review pursuant to Maryland Rule 8-131?

II.     Did the Court of Special Appeals err in concluding that in admitting evidence of previous disputes between appellant and the victim was harmless error, when the trial court failed to sustain the objection?

III.    Did the Court of Special Appeals incorrectly interpret the law, when the trial court's supplemental instructions to the jury indirectly suggests its own personal opinion on the witnesses testimony?

*Id*., Ex. 12, pp. 1-2.  The petition was denied on October 25, 2011. *Id*., Ex. 12.  Petitioner did not seek further review in the Supreme Court of the United States. ECF No. 1.  Petitioner has not pursued state post-conviction relief. *Id*.; ECF No. 3, Ex. 1, p. 8; Ex. 2, p. 6.

Here, petitioner maintains that (1) "[t]he trial court erred in granting the State's motion to exclude evidence that the primary investigating detective had been found to have lied to a judge in an unrelated case"; (2) "[t]he trial court erred in the admission of evidence of a dispute between [petitioner] and Robert Johnson"; and (3) "[t]he trial court erred in its supplemental instructions to the jury in response to the jury notes."

## Threshold Considerations

### Timeliness & Exhaustion of State Remedies

Respondents do not contend, and the court does not find, that the petition was filed outside  the one-year limitations period set forth in 28 U.S.C. § 2244(d)(1).  Further, petitioner no longer has any state direct review available to him with respect to the claims now before the

court; thus, the court finds the claims are exhausted for the purpose of federal habeas corpus review.

Procedural Default

Where a petitioner has failed to present a claim to the highest state court with jurisdiction to hear it, whether it be by failing to raise the claim in post-conviction proceedings or on direct appeal, or by failing to timely note an appeal, the procedural default doctrine applies. *See Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991) (failure to note timely appeal); *Murray v. Carrier*, 477 U.S. 478, 489-91 (1986) (failure to raise claim on direct appeal); *Murch v. Mottram*, 409 U.S. 41, 46 (1972) (failure to raise claim during post-conviction); *Bradley v. Davis*, 551 F. Supp. 479, 481 (D. Md. 1982) (failure to seek leave to appeal denial of post-conviction relief). A procedural default also may occur where a state court declines "to consider the merits [of a claim] on the basis of an adequate and independent state procedural rule." *Yeatts v. Angelone*, 166 F.3d 255, 260 (4th Cir. 1999).

As the Fourth Circuit has explained:

> If a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim. *See Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). A procedural default also occurs when a habeas petitioner fails to exhaust available state remedies and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Id*. at 735 n.1.

*Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998).

If a procedural default has occurred, a federal court may not address the merits of a state prisoner's habeas claim unless the petitioner can show (1) both cause for the default and prejudice that would result from failing to consider the claim on the merits, or (2) that failure to

consider the claim on the merits would result in a miscarriage of justice, *i.e.* the conviction of one who is actually innocent.[2] *See Murray v. Carrier*, 477 U.S. 478, 495-96 (1986); *Breard*, 134 F.3d at 620.  "Cause" consists of "some objective factor external to the defense [that] impeded counsel's efforts to raise the claim in state court at the appropriate time." *Id.* (quoting *Murray*, 477 U.S. at 488).  Even where a petitioner fails to show cause and prejudice for a procedural default, a court must still consider whether it should reach the merits of a petitioner's claims in order to prevent a fundamental miscarriage of justice.  *See Schlup v. Delo*, 513 U.S. 298, 314 (1995).

Before petitioner may seek habeas relief in federal court, he must exhaust each claim presented to the federal court by pursuing remedies available in state court.  *See Rose v. Lundy*, 455 U.S. 509, 521 (1982).  This exhaustion requirement is satisfied by seeking review of the claim in the highest state court with jurisdiction to consider the claim. *See O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); 28 U.S.C. § 2254(b) and (c).  In Maryland, this may be accomplished by raising certain claims on direct appeal and other claims by way of post-conviction proceedings.  Exhaustion is not required if at the time a federal habeas corpus petition is filed petitioner has no available state remedy.  *See Teague v. Lane*, 489 U.S. 288, 297-98 (1989).

---

[2]   Habeas petitioners may use an actual innocence claim to excuse the procedural default of a separate constitutional claim upon which they request habeas relief.  *See Murray v. Carrier*, 477 U.S. at 496.  "[When] a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Id.*; *see also Reid v. True*, 349 F.3d 788, 806 (4th Cir. 2003).  Petitioners who wish to use a claim of actual innocence as a gateway to raising an otherwise defaulted constitutional claim must demonstrate by a preponderance of the evidence that a reasonable juror could not have convicted the petitioner in light of the new evidence. *See Buckner v. Polk*, 453 F.3d 195, 199-200 (4th Cir. 2006).

Respondents maintain that petitioner's claim regarding trial court error in granting the State's motion to exclude evidence regarding the primary investigative detective has been procedurally defaulted as the claim was not preserved at the trial level.  ECF 6, p. 22.  The Court of Special Appeals in rejecting this claim found that at the beginning of petitioner's trial the State moved to prevent the defense from impeaching Detective McClain with a 1991 "fact sustained finding" that he had lied about the reason he was late to court in another case.  In 1991 that matter had been referred to the police internal affairs unit, which found he had lied to the judge regarding his tardiness.  ECF 6, pp. 13-16.  The detective was not a fact witness at petitioner's trial.  *Id*.  Defense counsel argued:

> Your Honor, I have to say that [] Assistant State's Attorney [] is correct about the rule that he cited in this case. If we had a witness for [petitioner] who was going to testify and he had, the conviction was fifteen years old, the State would obviously not be able to use that for impeachment.  For the record I would ask that you allow the defense to use that, but I see the rule that the State is citing. I will just submit on that.

*Id*., Ex. 10, p. 5.  The court granted the State's motion.  On appeal, petitioner argued that the trial court erred because it applied the wrong Maryland Rule.  Petitioner argued that the court should have applied Maryland Rule 5-608(b) regarding prior bad acts evidence, which has no time limit, rather than the Maryland Rule 5-609 regarding prior convictions which contains a fifteen-year time limit.   In rejecting petitioner's claim, the court held: "As the State correctly points out, appellant has failed to preserve his argument for our review because he did not raise it below." *Id*., Ex. 10, p. 6.  The Court of Special Appeals' finding is a clear statement of procedural default, and the undersigned acknowledges that ruling is not necessarily an unreasonable application of law, even though a general objection, such as that made by trial counsel in this instance, may preserve unspecified arguments for appellate review.  However, even if it could be

determined that procedural default did not occur, any error in admission of Detective McLain's testimony regarding his assigned task of gathering evidence at the scene of the crime was surely harmless.  As earlier noted, he was not a fact witness, so Covington's conviction did not hinge on the believability of his testimony.  Petitioner's first stated ground for habeas relief is without merit.

Standard of Review

An application for writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a).  The federal habeas statute at 28 U.S.C. § 2254 sets forth a "highly deferential standard for evaluating state-court rulings," *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *see also Bell v. Cone*, 543 U.S. 447 (2005).  This standard is "highly deferential" and "difficult to meet." *Cullen v. Pinholster*, 563 U.S. __, ___, 131 S.Ct. 1388, 1398 (2011);  *see also White v Woodall,* ___U.S.__, 134 S. Ct 1697, 1702 (2014) (quoting *Harrington v. Richter*, 562 U.S. 86, __, 131 S. Ct. 770, 786-87 (2011) (state prisoner must show state court ruling on claim presented in federal court was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.")).

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits 1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States"; or 2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  A state adjudication is contrary to clearly established federal law under § 2254(d)(1) where the state court 1) "arrives

8

at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or 2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

Under the "unreasonable application" analysis under 2254(d)(1), a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 131 S. Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "Rather, that application must be objectively unreasonable." *Id*. Thus, "an unreasonable application of federal law is different from an incorrect application of federal law." *Id*. at 785 (internal quotation marks omitted).

Further under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). "[E]ven if reasonable minds reviewing the record might disagree about the finding in question," a federal habeas court may not conclude that the state court decision was based on an unreasonable determination of the facts. *Id*. "[A] federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." *Renico v. Lett,* 599 U.S 766, 773 (2010) (quoting *Williams v. Taylor*, 529 U.S. 362, 410 (2000)).

The habeas statute provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "Where

the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010). This is especially true where state courts have "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." *Id*. at 379.

The Antiterrorism and Effective Death Penalty Act (AEDPA) erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court. AEDPA requires "a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error ... beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86,___, 131 S. Ct. 770, 786–787 (2011). "If this standard is difficult to meet"—and it is—"that is because it was meant to be." *Id*. at 786. A federal court reviewing a habeas petition will not lightly conclude that a State's criminal justice system has experienced the "extreme malfunctio[n]" for which federal habeas relief is the remedy. *Id*. (internal quotation marks omitted).

### Analysis

To the extent petitioner challenges the Court of Special Appeals' rulings as they pertain to Maryland law regarding admission of evidence and Maryland law regarding jury instructions, it is not the role of this court to second guess those conclusions. *See Rose v. Hodges*, 423 U.S. 19, 21-22 (1975). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). In the absence of a claim of a federal

constitutional violation, the claim is not cognizable.  *See* 28 U.S.C. § 2254(a) (a federal court may entertain a state prisoner's habeas petition "only on the ground that he is in custody in violation of the Constitution or law or treaties of the United States.").

1. Error in admitting Harmon's testimony

On direct appeal, petitioner maintained that the trial court erred in admitting witness testimony on cross-examination that appellant and the victim argued.  Petitioner argued that the testimony was prejudicial and unresponsive. In rejecting this claim, the Court of Special Appeals noted that defense counsel attempted to establish on cross-examination that the witness, Harmon, had a motive to falsely accuse petitioner because petitioner had belittled Harmon about being a drug user.  During this exchange, counsel asked Harmon if petitioner had treated Harmon like he was a fool and Harmon responded:

> [Harmon:]  Not face to face.  I know him and [the victim] used to argue all the []
> time but not me and him.  Nobody really pretty much argued with me because I
> stay to myself but him and Black Face argued the day before at the bar or
> something.
>
> [Court:] Wait for the next question.
>
> [Defense Counsel:]  Objection.
>
> [Court:] Wait for the next question.

ECF 6, Ex. 10, pp. 7-8.

The court found that even if the issue was preserved and the trial court erred in not sustaining the objection, any error was harmless.  *Id*., p. 9.  The court correctly noted that another witness had testified, without objection, that petitioner and the victim had an altercation before the stabbing.  Moreover, the court correctly noted that four eyewitnesses identified petitioner as

the stabber both during the police investigation and in court.   The appellate court's factual findings are supported by the record and shall not be disturbed.   Petitioner has pointed to no constitutional violation in the admission of this evidence and this claim, to the extent it states a cognizable claim, provides no relief.

       2.     Trial court error in jury instructions

In his appeal, petitioner maintained that the trial court erred in providing supplemental jury instructions regarding the testimony of a single witness, because the instruction suggested to the jury that they could convict petitioner based solely upon the testimony of Kramer, who was described during the appellate process as the "upstanding citizen" eyewitness.   ECF No. 6, Ex. 8, p. 15-18.

The record reflects that during deliberations, the jury sent three notes to the court.   The second note, the note at issue in petitioner's appeal, asked whether the jury could "base [its] decision on one individual's testimony."   ECF No. 6, Ex. 6, p. 109.   The parties were summoned before the trial court who advised them of the jury's question and indicated its intent to reread the identification of the defendant instruction and advise the jury that the answer to the question was that their decision could be based upon one individual's testimony if believed beyond a reasonable doubt.   *Id.*, p. 112.   Defense counsel sought clarification regarding the instruction to be given and the court responded:   "Yes, that is the instruction that says the identification of the defendant by a single eyewitness as the person who committed the crime if believed beyond a reasonable doubt can be enough evidence to convict the defendant."   *Id.*   Defense counsel requested the court simply read the instruction and permit the jury to draw its conclusion, stating,

"So I heard what you say.  I accept your ruling. I'll just note an exception."  *Id.*, p. 113.  The

court then re-instructed the jury:

> The second question is can you base your decision on one individual's testimony.
> I'm going to reread the instruction and then [I'm] going to give you a shorter
> answer as well. The burden is on the State to prove beyond a reasonable doubt
> that the offense was committed and that the defendant was the person who
> committed it.
>
> You've heard evidence regarding the identification of the defendant as the person
> who committed the crime. In this connection you should consider the witness'
> opportunity to observe the criminal act and the person committing it, including
> the length of time the witness had to observe the person committing the crime, the
> witness' state of mind and any other circumstance surrounding the event.
>
> You should also consider the witness' certainty or lack of certainty, the accuracy
> of any prior description and the witness' credibility or lack of credibility as well
> as any other factors surrounding the identification. You've heard evidence that
> prior to this trial several witnesses identified the defendant by a photographic
> array.  The identification of the defendant by a single eyewitness as the person
> who committed the crime if believed beyond a reasonable doubt can be enough to
> convict the defendant. However, you should examine the identification of the
> defendant with great care. It is for you to determine the reliability of any
> identification and give it the weight you believe it deserves.
>
> One moment, please. The short answer to that question, your specific question is,
> one, that you may believe any witness, all of their testimony, none of their
> testimony or part of the testimony and you may base your decision on the
> testimony of one witness if that witness - if you believe that witness beyond a
> reasonable doubt.

*Id.*, pp. 115-16.

In rejecting petitioner's claim, the Court of Appeals correctly noted the trial court's role

in instructing the jury and found that it "strain[ed] credulity to suggest that the trial court's re-

instruction betrayed the court's personal opinion that the jury could find appellant guilty based

on Kramer's testimony alone."  *Id.*, Ex. 10, pp. 11-12.  The Court of Special Appeals' factual and

legal rulings survive scrutiny under 28 U.S.C. § 2254(d) and shall not be disturbed.

**<u>Conclusion</u>**

The record establishes, and this court determines, that petitioner is not entitled to federal habeas relief.   There is no basis for finding constitutional deficiencies in the state court proceedings, and petitioner has failed to rebut the presumption of correctness of the findings of fact underlying the rejection of his grounds for relief.

Additionally, a certificate of appealability is not warranted as it may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).   The petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (citation and internal quotation marks omitted), or that "the issues presented are adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).   Because this court finds that there has been no substantial showing of the denial of a constitutional right, a certificate of appealability shall be denied.   *See* 28 U.S.C. § 2253(c)(2).

Accordingly, the petition shall be dismissed with prejudice and a certificate of appealability shall not issue.   A separate order follows.


Date:   April 9, 2015                                   _____/s/_____
                                                        James K. Bredar
                                                        United States District Judge

14